When you're ready. Okay. Good morning, Your Honor. Atmore Bagot for the appellant, Branden Pete. Your Honor, 12 years prior to the sentencing in this case, Branden Pete was a troubled Navajo youth, got into a lot of trouble, but then he committed a horrendous crime. He was convicted, sentenced to life under the statute, no discretion whatsoever. It must have been a short sentencing hearing. When Miller v. Alabama was decided, the Supreme Court decided that the Eighth Amendment requires that a juvenile, an adolescent such as Mr. Pete, had a constitutional right to present mitigating evidence to argue for a sentence less than life. His way of arguing at this resentencing was to present expert testimony from a Dr. Mark Walter, who was an expert in the field of cognitive brain changes and how it affects violence. Mr. Pete's argument or defense, of course, is that he was no longer a threat to the community or to himself or to anybody else that he had changed. Dr. Walter would have been in a perfect position to express an expert opinion on that. The sentencing factors the court has to consider, and whether these are sufficient but not greater than necessary, is to provide adequate deterrence for this type of criminal conduct, to protect the public from this guy particularly so he doesn't do it again, and to provide the defendant with needed correctional treatment. Your Honor, Dr. Walter would have been a perfect witness for the defense. I don't guarantee that the judge would have accepted the expert's conclusion, but certainly the defendant had a right to present that argument. The real question before this panel, we believe, is that whether he was denied the right to prevent a defense, and as I say defense, actually mitigating sentence, due to his poverty. We submit that the lawyer wanted to present this evidence. He was denied under CJA, which is a funding problem, and we understand there are money problems. Excuse me. Okay. Yeah. To get to some legal questions. The government argues, begins by arguing that the standard is whether you presented clear evidence of the need for something like that, and they have a very high standard of what you have to demonstrate to be able to obtain this expert evidence. What is the standard? What's the governing standard? We're reviewing for abuse of discretion? Your Honor, the legal issue is whether the defendant was denied the constitutional right to argue for a mitigated sentence, and we believe that's a legal issue. It's not abuse of discretion. There's considerable discretion here, rates of pay, how many experts, what the facts should be limited to, and so forth. But for the basic right to present the facts in mitigation of sentence, we submit that's a legal issue, and he was denied that due to his poverty. But what then, assuming for the moment it's not an abuse of discretion standard, but rather a legal standard as to when he's entitled to money for an expert for this purpose, what's the standard for that? That is to say, he doesn't get money for an expert just for the heck of it. He's got to meet some standard, so what is that standard? Well, the standard is whether he was denied the right to present evidence on his behalf. But that's not helpful. I mean, in other words, are you saying any time somebody comes in and says, I want you to appoint an expert, the district judge has to appoint an expert? You're not saying that. Well, I think it's a legal standard the Court should review that de novo. I understand that, but what's the standard under which we do de novo review? The government says, for example, that you have to show necessity by clear and convincing evidence. Is that for this evidence? Is that true or not? Is that the standard? We don't believe clear and convincing is the standard. It should be less than that. Is it necessity? Necessity of presenting a defense, yes, if there was some other way to do it. And if a person with resources could present this defense, the CJA person should have been able to do it also. It's a balancing. That's what CJA is all about. What the district court thought here and what the government argues is that he already had this evidence in at the time of the transfer proceeding. That was 12 years previous. Was that, and then there's a dispute that I don't know the answer to about whether that lawyer was a defense, I mean, that expert was a defense expert or whether he was a court-appointed expert not essentially on the defense team. Do we know? That was not a defense expert. That was a court-appointed expert for the purpose of the transfer hearing. That was Dr. Rosen. How do we know that? A, does it matter? B, how do we know it? Well, it matters because Dr. Rosenzweig, 12 years previous, was not a defense witness. He was not here arguing for a sentence. He was arguing whether this or presenting it. Well, the government says that various pieces of paper, like I think our own opinions, characterizes him as a defense expert. But you say that's inaccurate. Well, I think it matters who. No, but I'm asking you factually. There seems to be some documents, including our opinion on the previous appeal, characterizing him as a defense expert. But you're saying that's just not who he was. Well, he was appointed by the court for the court. He was then a juvenile. Remember, this is a juvenile transfer proceeding. And that standard is quite different from what we're talking about, life sentence versus less than life. I'd like to go on to another issue. Secondly, the guideline at Level 43 is very unique. It is the only one that does not provide a range. The Constitution requires that sentences in individual cases be imposed by judges, not by legislators, not by commissioners, not by politicians, but by judges. When the commission says life is the sentence, the only sentence, and that's the end of it. And it was, in fact, because that's what the statute said. That's the way it was. The statute said. That's what the statute says, and that's what the guideline said. The statute, remember, post-Booker, has been changed. I mean that the statute, there was a mandatory life sentence. Correct. Therefore, there was no point in putting a range in. So the only question really is whether after Miller they needed to change it. Well, yes, he has the right to argue for less than life. That's what Miller said. Of course he does, and he is. And literally speaking, although not maybe, did get less than life. But you're complaining about the range, and I think it's a very narrow question, which is whether because there's an exception for juveniles from the otherwise statutory mandatory minimum, does the guidelines have to reflect that exception? That's the only possibility, right? Two arguments here. Constitutionally, the judge has no discretion under pre-Booker that when Mr. Peete was sentenced the first time, there was no discretion whatsoever. It was life under statute and under guidelines, both. Then Booker came along, changed the statute. Booker didn't change the statute. Well, it didn't really change. Miller v. Alabama, in effect, changed the statute, but says a juvenile cannot be just mandatorily given life sentences. So we submit that even though this is a very unique guideline, it's just life, there's no range. The authorization of the Congress was to give judges a certain range, up to six months, up and down, and this is the one guideline that did not do that. It did not follow its authorization, and it is not only unconstitutional, but it is also outside the Enabling Act, which created the Sentencing Reform Act. I would just like to briefly discuss the third argument. Our disagreement with the government is primarily procedural. What happened here is that the defense filed an objection based on criminal history points. They went out in the hallway. The prosecutor convinced the defense attorney that, well, look, you know, you shouldn't do this. He agreed, withdrew his objection. That's a forfeiture. There's no waiver here. It's not the situation where the defense believes he has a right, and he does have a right, and he gives it up in a negotiated process, you do this, I'll do this, I won't bring this. But would all of this have made any difference? Excuse me? What would have made a difference if you had the difference, if you did or didn't have it? Well, the difference is if an issue is waived, it's gone. We can't even argue it on the peeling. I understand that, but I want to know, let's assuming that we decide the question, is there any, on a plain error basis, is there any, what difference would this have made? What difference would it have made whether you counted these or didn't count them? Well, he would have been in Category 1 instead of Category 2. He would have been, at least under guidelines, a first offender in the sense of being in Category 1, and the judge may have looked more favorably toward him in Category 1 than Category 2. We admit he was a troubled youth. He's certainly not a model citizen. So I'd like to remember. Yeah, let's hear from the government, and then we'll give you a chance to respond. Thank you. May it please the Court. Joan Rufinock, District of Arizona, on behalf of the United States. Dr. Rosenzweig was a defense witness. If the Court takes a look at CR 375, which unfortunately is not in the supplemental excerpts of record, but that was the motion for variance filed by the defense,  two witnesses at trial. He called a blood alcohol witness and Dr. Rosenzweig. For purposes of the transfer here. At trial, after the transfer proceeding? After the transfer proceeding. And as the Court is aware, and the government cited the law for this, there is no requirement that there be an expert. I see. So you're saying. I'm sorry. But when he was appointed, he was appointed by the Court. He was appointed as a defense witness by the Court. I thought he was appointed by the Court for the purposes of determining the transfer motion. No. That's incorrect. And the reason for that is there is no requirement for an expert at a transfer hearing. And it was the defense. Do we have enough in the record to determine that? You say this is not in the excerpts of record. Are the relevant documents in the record before us? Yes, they are. Okay. Yes. Because you can see from now. And I put them in the SCR because the docket for the juvenile proceeding is sealed. And I didn't have access to that. But I cite for the Court what document it is because the Court will have access to that. And the defense requested an expert for purposes of the transfer hearing. Okay. Assuming for the moment that you're right, that this was a defense witness, no loyalty to anybody but the defendant, what difference does it make in the current circumstance when we're trying to figure out whether he gets a resentencing? Because that was testimony with respect to this defendant at the time of the trial and sentencing, which was a long time ago. Yes. And we've got a fair amount of evidence as to his behavior in prison, which has not been exemplary, that has to be overcome if the district judge now on resentencing is going to give him a break. So it seems to me that somebody who gives a current assessment as distinct from an assessment of 15 years earlier would give something, would provide something that was not previously at issue. And I'd submit to the Court that Miller says that you look at the time of the offense, not 12 years after the fact. Did the government at the resentencing introduce evidence of what he did in prison? It was in the PSR, and the defendant himself allocated, and when he allocated, he said he was a changed person. I know. I'm asking something different. You're telling me that what happens in prison is irrelevant. Did the government try to keep it out? No, I'm not. Did the government put it in? The government didn't put it in. The pre-sentence writer put it in. Yes. So what I'm saying is I have trouble with your telling me it's irrelevant when the government puts it in, and it's obviously going to make a difference to the judge as he tries to figure out the resentencing. And I'm not saying, Your Honor, that it's irrelevant. What I'm saying is Miller says that the defendant is entitled to resentencing because at the time the offense was committed, as a juvenile, that there are certain characteristics of a juvenile that need to be considered. Right, including the fact that they have essentially non-mature sort of mental development and that they are likely to change over time. So it's not relevant at the resentencing to know whether they've changed over time? Miller doesn't just look at resentencing. Miller looks at sentencing at the time. I understand that, but now we're at the resentencing. Right. And ordinarily in sentencing you look at the person as they are at the time of the sentencing. Correct. But this, what the district court did is look at the information from the time of sentencing as well as the prior sentencing. And at the sentencing. But it was skewed. It was one-sided. In other words, he had the government's view of what his condition was at the time, but he didn't let the defense put on an expert as to what his prospects for rehabilitation were from thenceforward. I don't think that's quite true. And the reason I say that is if you take a look at the CR 375, which is the motion for departure, the defense took from that, from the trial testimony, the testimony of Dr. Rosenzweig, which had to do with the fact that an adolescent brain is more sensitive to all those factors. They had no choice whether to do that because they didn't have the other guy. They didn't have a current guy. It just seems like a very strange decision. I don't understand how you would justify when the government is trying to put on evidence of things that happened between those two periods and argue that he was not, that he had proven to be non-rehabilitatable essentially, why you don't get to counter that with an expert to look at his current mental situation. Take, for example, the co-defendant in this case who was 21 years old at the time the offense occurred. He doesn't get the benefit of Miller, and he doesn't get the benefit of a resentencing. And because he doesn't get a benefit of resentencing, there's no consideration of what's happened in the last 12 years. So he therefore didn't have the government standing up and saying he was a terrible guy in prison either. And in this case, the government's primary argument was look at the heinous conduct that occurred here. And that is what the court focused on. The court, in going through the 3553A factors, looked at the fact that in prison that he wasn't a model citizen. So it's inescapable. We just know as a matter of sort of human nature and good judging that the judge, in trying to figure out whether this person can be rehabilitated, looked at what he has done in the interim. I mean, I don't blame the judge at all for looking at that. That's perfectly relevant information. Let me ask you this. Did the government oppose payment to this expert? This was an ex parte motion. The government didn't even know about it. So you didn't take any position on it at all? We didn't find out about it until after the fact for appeal purposes. Okay. Is it your position, and I don't want to put words in your mouth, that the motion for Dr. Walter's services did not say that they wanted him to testify as to rehabilitation potential, but just wanted to go over what Dr. Rosenzweig had already done? What he said is that there's the possibility for insight into the last 12 years. The impact that incarceration has had on Mr. Pete. Correct. Doesn't that sort of infer what Judge Fletcher was talking about a moment ago, that the impact of incarceration would be significant toward his rehabilitation potential? It would be relevant towards it, yes. I agree with that. Isn't that really the issue on resentencing? If there's some evidence of rehabilitation potential due to the man's behavior the last 12 years, even though he's been in segregation a great deal of the time? It's the government's view that, well, the potential for rehabilitation is a factor that the court can consider under 3553A. One more question. I believe that your learned friend said that the standard by which we should judge this issue is a de novo standard, but I see some cases under 3006A which say that the trial judge's determination should be reviewed under abuse of discretion. Abuse of discretion. I agree. Isn't that the correct standard? I agree that that's the correct standard. But you also say there's necessity by clear and convincing evidence. Where does the clear and convincing evidence come from? And I believe that I miswrote that. The clear and convincing evidence is for the prejudice standard, not for the necessity. So he has to bring forth the necessity and then show prejudice to his case on a clear and convincing standard. But he can't, I mean, in this instance, because he wasn't able to pay the expert, he couldn't have gotten the expert to essentially make a proffer because he wasn't going to do it without getting paid. So the best he can do is the very, he couldn't have done better than he did with regard to what the witness was going to testify to, right? You couldn't ask for more when the whole problem is you won't pay him. Correct. But he already had. What the district court found is you're looking for information on something that's already been done and you haven't told me why you think there's going to be a difference. And I submit that just in talking to the defendant, in talking to the prison officials, in talking to anyone who's surrounded by him, they could have come up with some kind of information that would suggest that there's been a change in circumstance from the point when Dr. Rosenzweig conducted his investigation. The lawyer got up and gave some instances and the guy gave some instances. And beyond that, what were they going to do? As I said, in the motion itself, the defense could have put forth to the court additional facts such as this incident occurred, that incident occurred, just some additional information that would have supported this is why. Because what the district court found is you haven't told me anything that has changed for 12 years. If you give me, and I see my time is up, but the burden was on the defendant to show for funding that something had changed from when he had that initial evaluation. But that's a catch-22. He's got to show it without having the expert who has the information and the ability to show it. But just even to suggest that there was some change. But he did. He says, additionally, he, Dr. Walters, could offer insights into the impact incarceration has had on Mr. Pete, who has been in segregation much of his confinement. And you told me that that was circumstantial evidence of his rehabilitation potential. Okay. Thank you very much. I read could differently as could as in possibly as opposed to could give it to us. He's not going to give his opinion until he gets his retainer. Okay. Thank you. Well, Your Honor, what's changed in 12 years is the defendant's position is that he no longer possesses, no longer poses a threat either to any other victim and that he's not going to repeat this. And certainly, even though he's not been a model citizen, he hasn't committed any horrendous crimes either. I think our main dispute. What has caused him to be in segregation for much of this 12 years? He's not a nice guy, Your Honor. He has some problems. He's been a troubled youth now. He's a troubled adult. That's all I can tell you. He's troubled not by some force outside himself, but by himself. Well, that depends upon your viewpoint, sir. Okay. Environment versus heredity, you know, that's an old one. Your Honor, our basic dispute is the remedy for Miller v. Alabama. We say it's a de novo, new resentencing. The government is focusing on what happened 12 years ago. And I think that's the real issue is what is the remedy for a violation of Miller. Thank you. Okay. Thank you. Thank both sides for their arguments. United States v. Pete now submitted for decision.
judges: Fletcher, Berzon, Bea